UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICARDO JOSE PEREA ARGUELLO,<br><br>Plaintiff,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00786-RJS-DAO<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

This case arises from the detention and removal proceedings of Plaintiff Ricardo Jose Perea Arguello.[1] Before the court is Defendants' Motion to Dismiss.[2] For the reasons explained below, the Motion is GRANTED.

## BACKGROUND[3]

Arguello is a Venezuelan national currently living in the United States.[4] He was previously removed from the United States to Venezuela on October 5, 2023.[5] On November 6, 2024, he presented himself at the United States border with a CBP One appointment requesting permission to reenter the United States and seek asylum.[6] Customs and Border Patrol granted

[1] Dkt. 79, *Third Amended Complaint* (*Complaint*).

[2] Dkt. 85, *Motion to Dismiss* (*Motion*).

[3] The following facts are drawn from the Complaint. In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[4] *Complaint* ¶ 1.

[5] *Id.* ¶ 67.

[6] *Id.*

him parole to reenter the United States.[7] Arguello then filed an application for asylum, withholding of removal, and protection under the Convention Against Torture on December 17, 2024.[8] The Executive Office for Immigration Review accepted Arguello's application.[9]

On September 9, 2025, the Department of Homeland Security (DHS) arrested Arguello.[10] Defendants informed Arguello they would be reinstating his prior removal order because his reentry to the United States was illegal.[11] Defendants additionally filed a motion to pretermit Arguello's asylum, withholding of removal, and Convention Against Torture protection claims based on the existence of Asylum Cooperative Agreements (ACA) with Honduras and Ecuador.[12] The motion alleged that the mere existence of an ACA with Honduras or Ecuador required termination of pending protection applications without a merits hearing.[13] Accordingly, the ACAs barred Arguello's ability to seek asylum in the United States.[14]

Arguello filed his Third Amended Complaint (Complaint) with this court on March 19, 2026.[15] The Complaint asserts nine claims: (1) authorization of removal without judicial review in violation of the Fifth Amendment Due Process Clause; (2) unilateral reinstatement of a removal order without availability of review in violation of the Fifth Amendment Due Process Clause; (3) ultra vires denial of asylum in excess of statutory authority under the Administrative

---

[7] *Id.*

[8] *Id.* ¶ 68.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 81.

[13] *Id.* ¶¶ 81–82.

[14] *Id.*

[15] *See id.*

Procedure Act (APA); (4) agency action not in accordance with the law under the APA; (5) arbitrary and capricious agency action under the APA; (6) failure to perform mandatory duties under the APA; (7) unlawful retroactive application of law under the APA and *Landgraf v. USI Film Prods.*[16]; (8) equal protection violations under the Fifth Amendment; and (9) declaratory judgment under the Declaratory Judgment Act (DJA).[17] On May 26, 2026, Defendants filed the Motion seeking dismissal for lack of jurisdiction and failure to state a claim.[18] Arguello filed his Opposition to Defendants' Motion to Dismiss (Opposition) on June 17, 2026.[19] Defendants did not file a Reply.[20]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."[21] "Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things[.]"[22] This "concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."[23] "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in

---

[16] 511 U.S. 244, 265 (1994).

[17] *Complaint* ¶¶ 91–196.

[18] *Motion*.

[19] Dkt. 90, *Opposition to Defendants' Motion to Dismiss* (*Opposition*).

[20] *See Docket*.

[21] *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); *Tafoya v. U.S. Dep't of Just., LEAA*, 748 F.2d 1389, 1390 (10th Cir. 1984).

[22] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citation modified).

[23] *United States v. Cotton*, 535 U.S. 625, 630 (2002).

the absence of a challenge from any party[.]'"[24] In order to "satisfy itself of its power to adjudicate in every case and at every stage of the proceedings,"[25] "a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'"[26]

Because federal courts may only hear cases that present live controversies, claims based on resolved injuries are subject to dismissal.[27] Mootness, therefore, deprives this court of subject matter jurisdiction over a plaintiff's claims.[28] "A foundational principle of Article III is that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation."[29] "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."[30] "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."[31] "Put another

---

[24] *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006)).

[25] *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (quoting *Tafoya*, 748 F.2d at 1390).

[26] *1mage Software*, 459 F.3d at 1048 (quoting *Arbaugh*, 546 U.S. at 501).

[27] *See Defunis v. Odegaard*, 416 U.S. 312, 316–17 (1974) (holding that when a requested remedy is granted, the controversy ceases to "touch[] the legal relations of parties having adverse legal interests." (citation modified)); *see also Eaves v. Polis*, 167 F.4th 1304, 1310 (10th Cir. 2026) ("The constitutional mootness doctrine, grounded in Article III's case or controversy requirement provides that although an actual and justiciable controversy existed at the action's onset, if and when that controversy ceases to exist, a federal court must dismiss the action for want of subject-matter jurisdiction." (citation modified)).

[28] *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

[29] *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation modified).

[30] *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2013)).

[31] *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision."[32]

One exception to mootness is the voluntary-cessation doctrine, where "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[33] The exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct."[34] Nevertheless, "[a] defendant's voluntary actions may . . . moot litigation if two conditions are met: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[35] "The party asserting mootness bears the 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again."[36] Notably, "courts are more apt to trust public officials than private defendants to desist from future violations."[37] Accordingly, "government self-correction provides a secure foundation for mootness so long as it seems genuine."[38] "In practice," absent

---

[32] *Id.* at 1166 (quoting *Ind v. Colorado Dep't. of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015)).

[33] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

[34] *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008).

[35] *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)).

[36] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (alteration in original) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189).

[37] *Ghailani*, 859 F.3d at 1302 (citation modified).

[38] *Id.* at 1302 (citation modified) (quoting *Buhman*, 822 F.3d at 1167–68).

"*clear showings* of reluctant submission [by governmental actors] and a desire to return to the old ways[,]"[39] the government may "discontinu[e] challenged practices and moot[] a case."[40]

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of jurisdiction may be a facial attack, where the court questions the sufficiency of the allegations in the complaint, or a factual attack, where the court considers facts outside the complaint upon which the court's jurisdiction depends.[41] In resolving a factual attack, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."[42]

## ANALYSIS

Defendants bring a factual attack against Arguello's first and second causes of action, and a facial attack against Arguello's third through seventh and ninth causes of action.[43] The court has considered both parties' briefs, as well as the evidence attached to the briefs, and concludes this court lacks jurisdiction over each of Arguello's claims.

---

[39] *Buhman*, 822 F.3d at 1167 (alteration in original) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1117).

[40] *Id.* (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1116).

[41] *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001); *see also Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013) ("Where the party challenging subject-matter jurisdiction mounts a facial attack, 'the district court must accept the allegations in the complaint as true.' But if the challenging party brings a factual attack by 'going beyond allegations contained in the complaint and challenging the facts upon which subject matter jurisdiction is based the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (citation modified) (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001))).

[42] *St. Stephen's Indian High Sch.*, 264 F.3d at 1303 (quoting *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[43] *See Motion* at 4–11.

## I. Arguello's Due Process Claims are Moot

Defendants raise a mootness argument against Arguello's due process causes of action based on the fact that his original removal order was rescinded.[44] Defendants further argue that the voluntary cessation doctrine does not apply because there is no reasonable expectation that Arguello's prior removal order will be reinstated and any effects from Arguello's prior removal order have been completely and irrevocably eradicated. The court agrees and addresses each argument in turn.

### A. Mootness

Arguello's due process claims no longer present a live case or controversy because he received his requested relief. The first and second causes of action stand premised on Defendants' reinstatement of the prior removal order.[45] With respect to his challenge to the reinstatement order itself, Arguello's claims are moot. Arguello successfully reopened his proceedings in immigration court, continued to present his case, and ultimately received a new removal order on January 28, 2026.[46] Upon the issuance of a new removal order, Defendants rescinded the reinstated order.[47] Still, Arguello argues he is "suffering, and will continue to suffer, irreparable harm to his liberty and personal security if Defendants are permitted to remove him from the United States based on an unlawful and unreviewable reinstatement

---

[44] *See id.* at 5–9.

[45] *See Complaint* ¶¶ 94, 97, 99–100.

[46] Dkt. 85-3, *Exhibit 3* (*10/23/2025 Order of the Immigration Judge*); Dkt. 85-11, *Exhibit 11* (*01/28/2026 Order of the Immigration Judge*); *Motion* at 5–6.

[47] Dkt. 85-12, *Exhibit 12* (*Second Declaration of Evan Tjaden*); Dkt. 85-13, *Exhibit 13* (*Rescinded Notice of Intent/Decision to Reinstate Prior Order*); Dkt. 85-14, *Exhibit 14* (*Rescinded Warrant of Removal/Deportation*); Dkt. 85-15, *Exhibit 15* (*Rescinded Warning to Alien Ordered Removed or Deported*).

order."[48] But because Defendants rescinded the reinstatement order that forms the basis of Arguello's first and second causes of action,[49] Arguello no longer suffers a live, ongoing injury. Rather, Arguello received his opportunity to present his asylum claim and subsequently received a final determination.[50] As a result, a favorable judicial decision would no longer affect Arguello's rights.

Arguello argues he does not solely challenge the reinstatement order itself, but also the constitutionality of Defendants' "authority to treat a parole-authorized entry into the United States as an 'illegal reentry' under 8 U.S.C. § 1231(a)(5),"[51] thereby stripping Arguello of any opportunity for judicial review of the reinstated order.[52] Arguello asks the court to deem § 1231(a)(5) unconstitutional as applied and restore Arguello to the procedural posture he occupied before reinstatement of the removal order.[53] The court declines to do so. If the court were to grant Arguello his requested relief and deem § 1231(a)(5) unconstitutional as applied, Arguello's legal rights would likewise not be affected. Accordingly, the court cannot provide Arguello with his requested relief.

---

[48] *Complaint* ¶ 106.

[49] *See id.*; *Rescinded Notice of Intent/Decision to Reinstate Prior Order*.

[50] *See Complaint* ¶ 8; *10/23/2025 Order of the Immigration Judge*; *01/28/2026 Order of the Immigration Judge*.

[51] *Opposition* at 3.

[52] *See Complaint* ¶ 94; *see also* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.").

[53] *See Complaint* ¶ 97; *id.* at 48–49.

### B. Voluntary Cessation Exception to Mootness

Arguello urges the court to apply the voluntary-cessation doctrine, arguing Defendants have already received the practical benefits of the challenged conduct and are seeking to avoid judicial review.[54] Applying the two conditions set forth in *Ghailani*, the voluntary-cessation doctrine does not apply.

With respect to the first condition, whether "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur," [55] the court agrees with Defendants that there is no reasonable expectation they will attempt to reinstate Arguello's prior removal order.[56] A separate removal order was issued, leaving no practical benefit for Defendants to attempt reinstatement of the original order.[57]

Regarding the second condition, whether "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," [58] the immigration judge's issuance of a separate removal order, followed by Defendants' recission of the original order, "completely and irrevocably eradicated the effects of the alleged violation."[59] Core to Arguello's first and second causes of action are Arguello's complaints of removal from the United States without any sort of review.[60] However, Arguello received his requested relief: an immigration judge

---

[54] *See Opposition* at 4–5.

[55] *Ghailani*, 859 F.3d at 1302.

[56] *See Motion* at 7–8.

[57] *See id.*

[58] *Ghailani*, 859 F.3d at 1302.

[59] *See id.*

[60] *See Complaint* ¶¶ 91–106.

considered his case and subsequently issued a new removal order.[61] Since Arguello cannot face lingering effects of a rescinded order, the effects of his alleged violation have been completely and irrevocably eradicated.

Because the dispute underlying Arguello's first and second causes of action "is no longer embedded in any actual controversy about [Arguello's] particular legal rights,"[62] and the voluntary-cessation doctrine does not apply, those claims are moot. Accordingly, the first and second causes of action are dismissed on those grounds.

## II. Section 1252 Bars This Court From Considering Arguello's Statutory Claims

Also pending are Arguello's APA and declaratory judgment claims in his third through seventh and ninth causes of action.[63] Neither the APA nor the DJA provides an independent basis for jurisdiction. First, the APA does not apply if other "statutes preclude judicial review."[64] Second, under the DJA, "[o]ne seeking relief . . . must establish a separate and independent basis of jurisdiction."[65]

The INA governs "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States[.]"[66] Such review of an

---

[61] *See id.* ¶ 8; *01/28/2026 Order of the Immigration Judge*.

[62] *Buhman*, 822 F.3d at 1165 (citation modified).

[63] Causes of action numbers 3–7 fall under the APA and cause of action number 9 falls under the DJA. *Complaint* ¶¶ 107–71, 186–96.

[64] 5 U.S.C. § 701(a)(1).

[65] *Schulke v. U.S.*, 544 F.2d 453, 455 (10th Cir. 1976); *Groundhog v. Keeler*, 442 F.2d 674, 683 (10th Cir. 1971); *see also Barr v. U.S.*, 478 F.2d 1152, 1156 (10th Cir. 1973) ("Declaratory judgment relief is made available to Federal litigants by 28 U.S.C.A. §§ 2201-2202 and Rule 57 Fed. Rules Civ. Proc. They do not create jurisdiction.").

[66] 8 U.S.C. § 1252(b)(9).

action taken or proceeding brought "shall be available only in judicial review of a final order under this section."[67]

The INA further states:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . or any other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . .[68]

A petition for review "must be filed not later than 30 days after the date of the final order of removal."[69]

Defendants argue Arguello "failed to raise his claims [challenging removal] in the context of a petition for review filed with the appropriate court of appeals as required by . . . § 1252(a)(5) [of the INA]."[70] As a result, § 1252(a)(5) and (b)(9) deprive this court of jurisdiction over Arguello's claims challenging his removal under the APA and DJA.[71] In response, Arguello argues Defendants misconstrue his challenge.[72] Arguello contends he does not seek to challenge his removal order, but instead seeks to "challenge[] the legality of Defendants' interpretation and implementation of federal law, including DHS's assertion that a parole-authorized entry constitutes an 'illegal reentry' under 8 U.S.C. § 1231(a)(5), Defendants' implementation of the [ACA] framework, and Defendants' policy of retroactively and

---

[67] *Id.*

[68] *Id.* § 1252(a)(5).

[69] *Id.* § 1252(b)(1).

[70] *Motion* at 9.

[71] *Id.*

[72] *See Opposition* at 5.

categorically pretermitting pending protection applications."[73] Arguello further argues § 1252(b)(9) does not preclude judicial review of the "scope of agency authority and the legality of agency action" by this court. [74] In support of this argument, Arguello provides three cases.[75]

The cases cited fail to support Arguello's argument. Arguello first points to *Jennings v. Rodriguez*, where the Supreme Court entertained its jurisdiction given the potential obstacles under 8 U.S.C. § 1252(b)(9).[76] The Court focused much of its analysis on the meaning of "arising from" in the context of the scope of § 1252(b)(9).[77] Arguello states the Court explained that "§ 1252(b)(9) does not operate as a 'zipper clause' sweeping into removal proceedings every claim that has some connection to immigration enforcement."[78] However, *Jennings* dealt solely with an issue related to bond hearings.[79] In that specific case, the Court declined to address the scope of § 1252(b)(9), stating:

> For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.[80]

The Court held respondent's petition regarding the frequency of bond hearings did not arise from removal proceedings in the context of § 1252(b)(9).[81]

---

[73] *Id.*

[74] *Id.* at 5–6.

[75] *Id.*

[76] *See id.*; *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018).

[77] *See Jennings*, 583 U.S. at 292–95.

[78] *Opposition* at 6.

[79] *See Jennings*, 583 U.S. at 290–91.

[80] *Id.* at 294–95.

[81] *See id.*

The facts in the present case are different. Arguello's APA and DJA claims focus solely on the pretermission of his asylum claim based on the presence of an ACA.[82] Arguello provides no compelling authority,[83] and the court finds none, to support any assertion that Arguello's claims are not "challenging . . . part of the process by which [his] removability [was] determined."[84] Arguello's challenge is not independent or even collateral from his removal proceedings. At the center of Arguello's claims, he challenges the process of his removal.

Next, Arguello cites to *Nielsen v. Preap*.[85] Again, the facts in that case are distinguishable as *Nielsen* dealt with bond hearings and mandatory detention.[86] Simply put, *Jennings* and *Nielsen* concern separate issues than those currently before this court, and the factual bases by which the Court determined § 1252(b)(9) did not apply is different from the factual bases of Arguello's claims.

Lastly, Arguello cites to *McNary v. Haitian Refugee Center, Inc.* as supporting his argument that this court has jurisdiction.[87] Arguello argues "the Court held that jurisdiction-channeling provisions do not bar district-court review of systemic challenges to agency policies and practices where plaintiffs are not merely seeking review of individual adjudications."[88] Arguello overstates the scope of the Court's holding. The Court held *McNary* "relat[ed] only to

---

[82] *See Complaint* ¶¶ 107–71, 186–96.

[83] *See Opposition* at 5–7.

[84] *See Jennings*, 583 U.S. at 294.

[85] *See Opposition* at 6; *Nielsen v. Preap*, 586 U.S. 392, 404 (2019).

[86] *Nielsen*, 586 U.S. at 404.

[87] *See Opposition* at 6; *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991).

[88] *Opposition* at 6.

the SAW [Special Agricultural Workers] amnesty program."[89] Further, the section at issue, § 210(e) of the INA, lacked clear congressional language precluding district court jurisdiction to hear constitutional and statutory challenges to Immigration and Naturalization Service (INS) procedures.[90] However, the Court confirmed Congress could have used broader statutory language:

> [H]ad Congress intended the limited review provisions of § 210(e) of the INA to encompass challenges to INS procedures and practices, it could easily have used broader statutory language. Congress could, for example, have modeled § 210(e) on the more expansive language in . . . Title II of the INA by channeling into the Reform Act's special review procedures "all causes . . . arising under any of the provisions" of the legalization program. It moreover could have modeled § 210(e) on 38 U.S.C. § 211(a) . . . by referring to review "on all questions of law and fact" under the SAW legalization program.[91]

The current language of 8 U.S.C. § 1252(b)(9) includes the specific wording the Court in *McNary* provided as "broader statutory language"[92] to show Congress intended limited review of "*all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, *arising from* any action or proceeding brought to remove an alien . . ."[93] Such review must be filed with the appropriate court of appeals.[94]

---

[89] *McNary*, 498 U.S. at 483.

[90] *See id.* at 483–84.

[91] *Id.* at 494.

[92] *Id.*

[93] 8 U.S.C. § 1252(b)(9) (emphasis added); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("Section 1252(b)(9)] broadened the scope of exclusive review in the circuit courts of appeal to include all questions of law and fact arising from any action or proceeding brought to remove an alien."); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016) ("[W]e note that § 1252(b)(9) neatly tracks the policy and practice jurisdiction-channeling language suggested in *McNary*: the amended section channels review of all questions of law and fact to the courts of appeals for all claims arising from any action taken or proceeding brought to remove an alien from the United States. 8 U.S.C. § 1252(b)(9)." (citation modified)).

[94] 8 U.S.C. § 1252(a)(5).

Because Arguello's challenge "arises from" his removal proceedings, the plain language of § 1252(b)(9) and (a)(5) preclude this court from exercising jurisdiction over Arguello's APA and DJA claims. Accordingly, the third through seventh and ninth causes of action must be dismissed.

## III. The Court Lacks Jurisdiction Over Arguello's Equal Protection Claim

Remaining before the court is Arguello's equal protection claim under the Fifth Amendment.[95] Defendants seek dismissal of Arguello's eighth cause of action for failure to state a claim under Federal Rules of Civil Procedure Rule 12(b)(6).[96] However, the court will not consider Defendants' 12(b)(6) arguments because this court lacks subject matter-jurisdiction over the equal protection claim.[97]

The only avenue available for "judicial review of all questions of law and fact, including interpretation and application of constitutional . . . provisions," arising from removal proceedings is judicial review of a final order.[98] "A petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)."[99] None of the provisions in subsection (e) are applicable to this case.[100]

---

[95] *See Complaint* ¶¶ 172–85.

[96] *See Motion* at 14–17.

[97] Defendants advance two 12(b)(6) arguments related to Arguello's equal protection claim stating Arguello both failed to file his petition for review within 30 days after order of removal and failed to state a claim upon which relief could be granted in his equal protection challenge to pretermission of the asylum claim. *See id.* at 12, 14–17. The court declines to consider both arguments.

[98] 8 U.S.C. § 1252(b)(9).

[99] *Id.* § 1252(a)(5).

[100] Subsection (e) deals with judicial reviews of orders under section 1225(b)(1). Section 1225(b)(1) is not applicable here because Arguello's equal protection claim does not arise out of inspection and claim for asylum at the border. *See id.* § 1252(e); *id.* § 1225(b)(1).

Arguello's equal protection claim is centered on adjudication of asylum claims with ACAs and retroactive application of such agreements.[101] As applied to Arguello's case, he argues the retroactive pretermission of his pending protection claims based on the applicability of ACAs was a denial of his equal protection rights because similarly situated applicants not subject to ACAs were permitted to proceed on the merits of their claims.[102] Whether the question presented is statutory or constitutional, the result is the same.[103] District courts have no authority to consider questions of law or fact arising from removal proceedings.[104] Similar to his statutory claims, Arguello's equal protection claim deals with the invocation of ACAs and pretermission of his asylum case. This claim falls squarely within the confines of removal proceedings, and accordingly must be brought in the appropriate court of appeals.[105]

The court finds it lacks subject-matter jurisdiction over Arguello's equal protection claim because it arises from his removal proceedings. Accordingly, Arguello's eighth cause of action must be dismissed.

---

[101] *See Complaint* ¶ 175–78.

[102] *Id.* ¶ 182–83.

[103] *See* 8 U.S.C. § 1252(b)(9); *id.* § 1252(a)(5).

[104] *See id.*

[105] 8 U.S.C. § 1252(a)(5).

## CONCLUSION

For the reasons explained above, Defendants' Motion is GRANTED.[106] All Causes of Action are DISMISSED. The Clerk of Court is directed to close the case.

SO ORDERED this 17th day of November 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

[106] Dkt. 85.